Good morning, your honors. The district court dismissed this complaint for trademark infringement for failure to adequately allege a likelihood of confusion. This court, however, has repeatedly held that with rare exception, likelihood of confusion is not meant to be resolved at the pleading stage, but instead is meant to be a factual determination under the various factors identified in Sleekcraft. Thus, it is highly unusual for a district court to dismiss a Lanham Act claim on this basis on the face of the pleadings, and that is the rare exception, except in cases that are obviously frivolous in their allegations, and this is certainly not such a case. Appellants have shown that their allegations of likelihood of confusion here are more than enough as a matter of law to allow them to proceed to discovery, and this court has made clear that in assessing a likelihood of confusion, the similarities are to be weighed more heavily than the differences, certainly at least at the pleading stage. Actually, it does not appear that this circuit has ever affirmed a Rule 12b6 dismissal of a trademark claim for failure to adequately allege confusion where the allegations have even remotely resembled those set forth here. So let me briefly review the key allegations here under the Sleekcraft criteria, starting with the similarities of the marks. Are you aware of any other case that involved a single book and the title of that book? I couldn't find any such cases. I'm sorry, a single? A single book and the title of that book. Well, as I pointed out to this court when we were here last time on appeal, this court has never heard a case before in a title versus title context. So here we have a title of a book against a title of a film, and on that basis, this court last time in connection with Jack Daniels had reversed and remanded for application of the likelihood of confusion or application in accordance with Jack Daniels applying the likelihood of confusion. Jack Daniels was a toy, and there was, of course, all sorts of toys, and it was a comparison to the liquor. And I was just looking for some exemplar where the title of a book was given trademark status. Are you aware of any? Because I didn't find any. Oh, yes. The title of a book, and I can give you the case on rebuttal, but yes, the brief does cite several cases where when secondary meaning is found, then there can be a trademark in a book. So while the trademark office does not register titles as books, once you show that there is secondary meaning, then in that situation, you can have a protected title. I believe Rogers itself cites to that, but when I come back up, I can give you the exact pin site of a couple of cases. So it seems that your argument is skipping ahead a few points. I mean, Judge Yakuta is raising the issue of whether your clients have a protectable interest, a protectable trademark to begin with, how we should characterize this title. Is it descriptive? Is it suggestive? Is it something else? And then, of course, there's the issue she's raised with whether a single title can be protected and whether that's the case if there's secondary meaning. Then there's the issue of whether the Rogers test even applies. And then there's the issue of whether we go to sleek craft and the eight factors there. So the way you start your argument, I think you're just assuming there's a protectable interest and Rogers doesn't apply and we should just go straight to sleek craft? Well, I'm not assuming that. On appeal here, that was the issue that was raised, whether the likelihood of confusion test was satisfied. The court below has found that Rogers does not apply because the defendants are using the plaintiff's mark here as a source identifier and source identifiers are required to meet on the usual battlefield of likelihood confusion pursuant to Jack Daniels. So the issue here that was raised on appeal was just as to the likelihood of confusion, not as to the... But don't they challenge the district court's conclusion that Rogers doesn't apply under Jack Daniels? They do, but they did it in an odd way. They didn't cross appeal just in their opposition to our appeal on the likelihood of confusion. They just re-raised all of Rogers again, but that wasn't actually the subject of our appeal. It was the subject of, by whatever means they felt they could raise in an opposition on the likelihood of confusion issue, re-raising the whole issue again of Rogers. But as far as secondary meaning, the secondary meaning issue was decided three orders ago at the lower level. And so any issue as to that would have already been waived because when this court remanded, what can be brought up again is only what was either remanded or issues that weren't decided but had been raised in the prior appeal. So the issue of secondary meaning, my understanding is that that had been resolved and is the law of the case and that here we were only talking about likelihood of confusion. But as far as secondary meaning here, as I said before, once that is shown, it's a protectable mark even if you couldn't register a title of a movie or book in the first place. And so the court had found that that was shown here in secondary meaning. But isn't the issue at this stage in the proceedings and at the procedural posture before the district court whether you've plausibly alleged secondary meaning, that secondary meaning can be shown. So you have allegations in your complaint about the book being favorably reviewed, Amazon reviews. I think there's allegations that they deliberately changed the title of the film to mimic the book, that the author is recognized on the street. And how do all of those things support that you've plausibly alleged that a trier of fact could find secondary meaning? Well, in the first instance, yes, for instance, those various allegations show secondary meaning because they show that there was a widespread recognition in terms of the public's understanding of the association between the gringo title with the gringo book and its authors and particularly on Amazon where it reached number one bestseller status. So all the reviews on Amazon, all the reviews in the publications, its achievement on the bestseller list, all of that shows the criteria to meet secondary meaning, which the district court had found even from the beginning before this case was even ever appealed the first time on the Rogers issue that was pled. And so I'm not sure respectfully if that is one of the things that can be heard now considering that it was not raised in the first appeal. It was never raised until now in this opposition by the defendants. But in any event, for those reasons, the court below and has found that there's secondary meaning and I submit again for the same reasons that there are. Did we on appeal find there was secondary? In the first appeal, did the court find there was secondary meaning? The court, that was not before the court on the first appeal. We have not ruled on that issue. Is that correct? Correct. It was never appealed by, it was never appealed the first time around. The court remanded last time just in, I think it was one sentence saying on the basis of Jack Daniels and put it back down for that determination. So we didn't limit what the district court could find. They, well, the court remanded on the basis of Jack Daniels and so the district, and so my understanding. So you read that as being limited to the Jack Daniels, but we didn't say that. Is that right? That was my understanding from the remand citing that. We'll assume that we have a question about secondary meaning and that's why I asked what was the best case you had that a single book title had secondary meaning and could have a protectable trademark. Yes, and that's, and I wanted to get you the exact pin site, which I have here, but when I come back for rebuttal, I will give that to you. But I do think it's important to highlight some elements of the sleek craft factors. In particular, Judge Selma found that the, that the marks were very different, but in fact they are very similar. Plaintiffs allege in particular, plaintiffs allege in particular here that they use the same term gringo in all capital letters for the same purpose, the title of their work to refer to the same thing, the protagonist with the same meaning, a non-Spanish speaking American out of his element South of the border for a story with a similar theme, a protagonist on the run after being set up for selling marijuana with typeface and cover art that furthers the similar theme and both with Amazon endorsements. The court has been clear that for the purpose. The other side points out that gringo is a single word that's very often used in that and there are lots of other books and material that are named gringo. What's your response to that? That none of that there's before the record here on a motion to dismiss and there's nothing in the record that shows that any other titles with the one word gringo, which is what the court below found we have secondary meaning in has ever also achieved secondary meaning and the case law is clear that it is not a matter of whether there's any third parties that have ever used the word before. It's a matter of first of whether there's been secondary meaning in your use of the mark. And secondly, it's a matter of whether you have priority over the defendant and are you assuming there's secondary meaning or are you saying that, but I think there were 500 reviews and Amazon that that is enough to create secondary meaning, I guess I'm confused about that. I'm saying that I was saying that that the court below found that the allegations that we reviewed just a moment before upon the other question about all the reviews on Amazon, all the reviews of national publication, the number one Amazon bestseller list amongst others. Those are what gave the book secondary meaning and that and that that's what the court below had based its opinion on. I'd also like to point out to the court that the entire issue here is that the evidence are using a mo are using emotion to dismiss the pleading stage to dispute whether things should be one way or things should be the other way or people might think this or people might think that that's all interesting, but that's on the evidence. The allegations must be taken as true here. Can't be the judges below subjective opinion, correct? But here when we say that when the court below says that the title of the book is gringo coal in my life on the edge is an international fugitive. For instance, that does seem to be a subjective interpretation because right here there's no colon on the first page that the subtitles below on the actual title page in black and white only the word gringo appears, not the subtitle. And if you go to the third title page, the word gringo appears in big letters separated by a big line that then has in different font below the subtitle. So perhaps if you had a fact finder, they could make a different determination. But right here there's plausible allegations that gringo is the title. The court below found that it had secondary meaning that there's a bunch of reasons why the font, the all capital lettering, the similar common themes in the book, all of these point towards similarities. And the one thing I want to stress in particular is the presumption that intent. We allege intent. We allege that they retitled the book gringo. They were titled the movie rather gringo after we had achieved number one bestseller status, that they knowingly did it and moreover that they intentionally did it to deceive. This court has made clear that there is a presumption that once intent is can be inferred that there is a presumption of confusion and the court must engage then at that point to see to the other factors heavily weigh against the confusion here. That doesn't seem that that's what happened at the lower level. Instead of instead of accepting that presumption, the court seemed to just look at the other factors, engage in its subjective opinions, adopt the defendant's arguments over things that might be borne out in the evidence on a summary judgment, but did not did not stop at the did not stop before actually engaging in fact finding and did not even honor the presumption to say, wait, OK, the balance of the factors. Do these actually overcome the presumption raised by intent? You want to save some time for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Moaz Kaba on behalf of the appellees in this case. And I'd like to start by really making sure everyone is on the same page about the steps that Judge Beatty was identifying. Sleecraft is sort of the third step here. The first step, and the court has been trying to tease out, is you have to establish you have a valid trademark interest, a protectable interest in this word. Appellants have picked a single word, commonly used, gringo. It is just but one word that appears in the title of their book and now seek to lay claim to any other expressive art that also chooses to use that word. The Federal Circuit in- I wonder if their complaint has to go that far, that they could challenge anybody, any time, whoever used the word gringo. One of the things that's striking about this is sort of the proximity of the movie to the book. And that seems to be – they're not contemporaneous, but they certainly are contemporaries. And that feels a little different from some other things. I think temporally there are years in between. The movie actually began being developed before the book was published. That's the complaint alleges, that the movie began before the book. The stories, even as defined by the complaint, are different. Sure, there is a commonality. Using the word gringo the same way, well, because gringo is a defined word, the case law has been clear, Judge Bivey. For the very reason that I think Judge Okuda was trying to probe, the titles of single works are generally not protectable as a matter of law unless- There's some splits in the circuit of this issue. There's a Second Circuit's position, the Federal Circuit's position, the Fifth Circuit's position. I don't think the Ninth Circuit has taken a position, not that I could find. But I did not read your briefs to argue that there's a per se prohibition, that a single work, its title can never have trademark protection, because the case law seems to suggest that if we conclude that it is descriptive, nonetheless, if it has secondary meaning, it can have trademark protection under the Lanham Act. That is consistent with our view, Judge Bivey. We're not appearing before this Court to say you ought to adopt a per se prohibition or a per se rule here. The reason we cite to these cases, however, that because they are animating the very reason why it is hard to get secondary meaning. We agree that if even the title of a single work, it is difficult, particularly when the title is descriptive, as it is here about Gringo, acquires secondary meaning. So then you rely on materials outside of the pleadings. So you rely on screenshots from Amazon showing books and movies or other things with the title Gringo. But the district court didn't consider that. The district court did not take judicial notice of those materials. And so I think what we're looking at is whether the district court abused its discretion in deciding not to go outside the pleadings on this motion to dismiss and not to consider that. I mean, the district court incorporated the book and the movie, but did not then take judicial notice of other materials. The district court decided it didn't need to. So two things happened. The first time we went down, the district court applied Rogers and Mattel, and I'd like to talk to the panel about that in a moment. But, of course, you only get there if you establish secondary meaning, which is their burden. The district court in the first instance said, I don't even need to go there. I don't need to take judicial notice of it because I would dismiss regardless, essentially, assuming you've established the secondary meaning. In this case, the district court actually. Because of Rogers. Because of Rogers. Okay. The second time we went down, the district court didn't rule on the request at all. And there are cases, and I can pull some sites if it would be helpful to the panel, where the Ninth Circuit has taken judicial notice of things. The Ninth Circuit says under the Iqbal-Twombly plausibility standard, we don't have to be blind to the existence of other things out there. And here we argue, and it is in the record, and we put it in, the word gringo has been used in lots of creative expressions preceding plaintiff's use of that word. And, obviously, postdating plaintiff's use of that word. Which is why the real question is, okay, so does a substantial portion of the public associate that word, that one word of your title, with the publisher, the source? That is the test for secondary meaning here. And all plaintiffs have pointed out, and Judge Beatty, you were sort of identifying it in the complaint, is we, it was sort of popular, and some people associate the author with the book. But that doesn't necessarily mean that the public, and there are not allegations to this effect, associate the word with the source. That is, the word gringo with the source. And I think Judge Ikuda's point about, is it 500 Amazon reviews, surely that could not be enough to satisfy secondary meaning. But even if they establish secondary meaning, you still, under both the Supreme Court's decision in Jack Daniels, and this court's recent decision in AJ Press, that maintained the pre-Jack Daniels-Rogers analysis in this circuit, they still have to establish that Rogers does not apply here. And what the Jack Daniels court said, and what the AJ Press, what this court said in out of Rogers, if the title, if that is, the defendant is using the mark as a mark. If the defendant is using the mark here, gringo, to serve a source-identifying function. In that realm, it is absolutely correct. You go to sleep. And that's where the district court concluded that the defendant was using gringo to identify the source, the book. That is what the district court, we believe, erroneously concluded. Of course, on appeal, this panel under Hall, we've cited the cases, footnote 2 in our answering brief. The court can affirm on any basis. It doesn't have to only affirm on the Sleekcraft basis, even though we believe the court could affirm on Sleekcraft as well. But here, I think what the court should be looking at is this circuit's opinion some two decades ago in Mattel. And in Mattel, the court, Judge Kaczynski writing for the panel, said titles of expressive works are not source-identifying. They are conveying a different message about the artistic expression. In that case, it was a title song. It was the Barbie Girl song. And this court said, no, this is the problem when you are trying to limit, essentially take hold of a word that can be used in creative expression. Because gringo, in this case, the title of the movie, is not identifying a source at all. It is quite literally what the Mattel court said was conveying a different message. And, of course, the Supreme Court in Jack Daniels cited Mattel approvingly, saying, yeah, that is the kind of case in which Rogers applies. Here, and the court can look at the complaint. I mean, they held up the book. But... If you had titled your movie Star Wars, would that be source-identifying? Well... It's two words. Well, there is a difference, Judge Bybee. And we address this very hypothetical in our papers. Rocky is another example that folks have often used. Star Wars would both have gotten through the first gateway, because it does have secondary meaning. Also, it is not a single work. It is a series of works. And the case law recognizes a difference between a single work and a series of works. And then, I think you would have to look to how the defendant uses it. So, the secondary meaning analysis, of course, is what does the public view associate the word with? The source-identifying analysis is what is the defendant intending to convey by use of the word? Here, if you look at paragraph 25 of the complaint, where they actually put up the book and the DVD, the movie, the film side-by-side, the film, actually, above Gringo, says Amazon Original. That is the source-identifier with respect to this book. It is not the title of the book, Gringo. And that is why you have cases like Mattel, like Dr. Seuss, like Fox, dealing with the Empire TV show and the use of Empire, both the title of the TV show and that was a trademark, an actual trademark of a record company. The court says, no, no, no. That is not enough to use that word. You have to get through this Rogers analysis. And I think my friend on the other side said there has never been a title versus title case. I mean, Dr. Seuss was a title versus title case. And the plaintiff and Dr. Seuss said, we own the trademark to, oh, the places you will go. And the defendant in that case added the word boldly and intended to copy Dr. Seuss, the font, the color, the typeface, the way that the words were strung together. And this court said, no, that does not pass muster under Rogers, that that case would be dismissed. Counsel, one of the things that you said in your analysis of the use of Star Wars and Rocky, which I thought was a very good point, was that the public certainly would view that. And I think that there would be easily obtainable evidence. You pointed out a minute ago that they did not plead anything about the public, about the public perception outside of the 500 Amazon reviews. Is that a Twombly error on their part? Is that a pleading error that they didn't provide some kind of a survey conducted by some reputable polling group that could connect these two? I don't think, Judge Bivey, I'm not here to tell you that plaintiffs must conduct surveys before filing every one of these complaints. I think they could be helpful, but they are never, never dispositive. And we have that from the case law. The problem here is even saying the book is popular, even if the book had 5,000 reviews, that doesn't mean that a substantial portion of the public associate the title, Gringo, with the producer, that is the publisher of the book. But couldn't such evidence be adduced before we went to summary judgment? But they have to still make the sufficient allegations to even establish that their non-registered mark, a single word from a single publication, has achieved secondary meaning. And that gateway is an important gateway. Before you get to even either Rogers or Sleevecraft. Outside of a survey, how would you establish that? Well, so the cases, what the cases have said is you've talked about the amount of marketing in specifics, how many dollars you have spent to associate the public. The widespread public recognition, some cases, Your Honor, have cited, actually cited to actual consumer feedback saying, oh, I thought that this was your book, for example. But didn't they make those allegations where they alleged that people were not purchasing the book because they thought the movie had been adapted from the book and they didn't like the movie? And so this sort of negative pushback on the book? So they, I don't, I think that they make certain allegations about depressed sales of the book, Judge Beatty. I don't think they're tying it to the actual secondary meaning test, which is the substantial portion of the public believing that other things titled Gringo necessarily come from this same source. And so I think even if you get past that, though, and I do want to address Sleevecraft for a moment, even if you get them to secondary meaning, it still does not establish that we use the mark as source identifying to get us out of Rogers. And if you apply Rogers, it's a straight, it's a pretty straightforward analysis that this Court has done repeatedly in these cases to kick out precisely these sorts of complaints. Judge Okuda, I just, I do want to be very specific because you asked this question. The previous panel did not rule on any of the issues. The previous panel, we had, we had a fairly robust argument. A lot of time was spent talking about Rogers. The Star Wars question had also come up. We talked about secondary meaning, certainly. What the previous panel did, they asked me, they said, Jack Daniels is pending. What are we supposed to do with that? And I said, you should probably wait and see what happens. And then you may have to remand. And that's what they did. They vacated, they didn't reverse. They vacated and remanded, which is why we went back to the District Court to kind of go through these issues again, which is why this panel now is going to have an opportunity to address these issues substantively. So, assuming plaintiffs can even get, they get secondary meaning, assuming they Well, they don't get secondary meaning here, that they plausibly allege it. That they plausibly allege secondary meaning, notwithstanding the case law that has explained titles are generally not tied to publishers, notwithstanding the case law that says that single titles generally don't get trademark protection without establishing secondary meaning, and notwithstanding the fact that this word, gringo, has been used multiple times before and after this book. Assuming that this Court says, fine, you've plausibly alleged secondary meaning for our purposes, and they then get out of Rogers' land because we, they are able to, you believe that they have plausibly alleged that we use the title in a source identifying way, again, notwithstanding Mattel, notwithstanding Dr. Seuss. And then you get to Sleecraft. I think here, that is yet another basis to affirm the district court, because the district court did not go outside of the pleadings, Judge Beatty, looked at the complaint, the allegations in the complaint, and looked at the book and the film, and said that a majority of these Sleecraft factors actually weigh in favor of the defendant and against likelihood of confusion. The one that they have seized upon, and they have argued, that the defendant somehow intended to do something, intended to confuse, one, that those allegations are on information and belief. They are not actually pled apart from information belief allegations, and they're not plausible in that regard, and the court doesn't need to consider them. But even if you accept those, that is but one of the Sleecraft factors. That is not – that factor does not usurp the work of all of the others. And with respect to that factor, the district court actually credited their information and belief allegations and said, that one we will weigh in favor of plaintiffs and still – and still dismiss. I see the light flashing, and Judge Acuta is about to tell me to sit down, so no further questions. Thank you for your argument, and you have a few minutes for rebuttal. If you don't mind, I'm going to take a few seconds on the computer. Should I bring it up there? What do you guys prefer? You can bring your computer up. Okay. So to answer about secondary confusion, the Rogers-Grimaldi case itself at 997-98 addresses the fact that it's well established that where a title of a movie or a book has acquired secondary meaning, that is where the title is sufficiently well known that the customer is associated with a particular author's work. The holders' rights to that title may prevent use of the same or similarly confusing titles by other authors. Also, in the brief that was submitted below, we cited to the case from the Secart-Hawkins v. Portal Publications, 189F3D473, which says the same. If, in the record, if you're honest, we'd like to look, it's at page 7 and 8 of that brief. There's a whole bunch of cases citing that this court saying the same thing. But what I want to boil everything down to here is that, in the end of the day, if this case doesn't state a claim for trademark infringement, where somebody has gringo in all block letters, the same title, we're alleging it's the same, a similar theme, we're saying that they retitled it when they said there's no plausible allegations. We're saying they retitled it, which should draw the inference that they did it deliberately right as we were a number one Amazon bestseller when they released an Amazon original movie. Everything that everyone keeps saying about look at the book, look at the movie, look at the covers, what about surveys, all this stuff is exactly what should go on at the discovery stage. But we've had no chance to put this forward because we're dealing with the actual pleading itself. And so, in the end of the day, if this court is going to say that when someone pleads these things that it's not enough to be, that it's not enough to have secondary meaning, if somebody's going to say that, well, no, we can't get to the sleek craft factors because Rogers Grimaldi applies because they're not using it as a source identifier, I want to remind the court that all the things they're doing to get public recognition are the exact same things that we did to actually get secondary meaning. So they are obviously using it as a source identifier, or else what is all this marketing that they're doing? And then in the end, if we're not going to... Over time, please wrap up. No, I appreciate that. I guess I'll leave you with this. In the end, the idea of the intent to the presumptions, we have to look at what the cover of the book and movie is. And what I want to leave you with here, which I forgot, is that the movie they actually submitted to you guys is a different cover than what's in the complaint, which furthers the factual issue. But I just want to leave the court with the idea that on sleek craft, in Rogers, if we're going to start to allow people to intentionally do things and not get to discovery to actually show it and shut it down here, well, then less a confession. We can never really advance. I'll rely on my brief for the rest. Thank you, Your Honor. We thank both parties for their arguments. The case of Daniel Davis versus Blue Tongue Films is submitted, and the court for this session stands adjourned. All rise. This court for this session stands adjourned.
judges: BYBEE, IKUTA, BADE